IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

NICK STEARNS,                              )
                                           )
            Plaintiff,                     )    TC-MD 110252D
                                           )
      v.                                   )
                                           )
MULTNOMAH COUNTY ASSESSOR,                 )
                                           )
            Defendant.                     )    **DECISION**

Plaintiff appeals the 2010-11 real market value of property identified as Account

R591892 (subject property). A telephone trial was held on January 19, 2012. Plaintiff, an

Oregon licensed real estate broker, appeared on his own behalf. David Babcock (Babcock),

Appraisal Supervisor, Division of Assessment, Recording & Taxation, Multnomah County

Oregon, appeared on behalf of Defendant. Jeff Sanders (Sanders), Real Property Appraiser,

Division of Assessment, Recording & Taxation, Multnomah County Oregon, testified on behalf

of Defendant.

Defendant objected to the court admitting Plaintiff's Exhibit 1, alleging that it was not

exchanged timely in accordance with Tax Court Rule-Magistrate Division 10 C(1). The court

sustained the objection and Plaintiff's Exhibit 1 was not admitted.[1] Defendant's Exhibit A was

admitted without objection.

## I. STATEMENT OF FACTS

Plaintiff and Defendant agree that the subject property improvement at issue is "a

condominium unit constructed in a townhouse configuration. [The condominium] is part of a

_____

[1] Plaintiff's evidence was a two page listing for a condominium in the subject property's same building complex that sold ten months after the January 1, 2010, assessment date.

contiguous two-plus city block development situated between St. John's City Park to the east and the core of St. John's downtown area to the west." (Def's Ex A at 2.) Plaintiff requested a real market value of $120,000. Plaintiff testified that he determined real market value based on the price of the first unit sold after an "invasive forensic inspection" conducted in October 2009 revealed $4.5 million in damages to the development. Plaintiff testified that Western Architectural, an accredited architectural firm specializing in building damage and construction defect investigations, issued a report of its inspection in November 2009. Plaintiff testified that the damage lead to a lawsuit "in 2010;" because the entire development is "still embroiled in the lawsuit, the project['s condominium units are] unmarketable." Plaintiff testified that the lawsuit "encumbers the common attributes" of the development and significantly reduces the value of all of the condominium units located in the development, including the subject property.

Babbock questioned Plaintiff as to how buyers knew about the inspection report, stating that Defendant discovered the lawsuit by reading a 2011 community newsletter. Plaintiff testified that the homeowners' association informed homeowners in the development of the inspection report "in November 2009;" sellers are required to alert prospective buyers about known defects and pending legal actions that relate to a property offered for sale.

Sanders testified that he appraised the subject property using a market sales comparison approach. (Def's Ex A.) Sanders discussed the three properties he concluded were comparable to the subject property:

> "All three Comparables share a close physical proximity to the Subject property. [Comparables] One and Two were chosen for their nearly identical amenities and age as they were constructed by the same builder and are located in the same project as the subject. Comparable Three is also very similar in size and age to the subject."

(Def's Ex A at 3.) Sanders testified that the three comparable properties were sold between

June 1, 2009 and October 22, 2009. (*See* Def's Ex A at 4.) Sanders testified that after making only a sale date adjustment, Comparable One's adjusted sale price was $183,350. (*See id*.) After adjusting for sale date and age (one year) difference, Sanders testified that Comparable Two's adjusted price was $205,357. (*See id.*) Sanders testified that after adjusting for sale date, year built, size, and heating system, Comparable Three's adjusted price was $209,090. (*See id.*) Sanders concluded that "[w]eighing all factors of comparability for each sale, a retrospective estimate of market value of $197,000 [for the subject property] is indicated and well supported." (Def's Ex A at 3.) Plaintiff testified that Defendant's real market value determination was inaccurate because all three of Defendant's comparable properties sold prior to the discovery of the development's defects.

Sanders testified that, as part of the appraisal, an inspection of the subject property was conducted. Sanders testified that water damage was known to have occurred in one bedroom of the subject property, but the long-term tenant living at the property when the damage occurred informed him that a contractor stripped the affected area down to the studs and replaced all the damaged aspects with new materials; a follow-up atmospheric test confirmed that there were no remaining impacts from the water damage.

Sanders testified that his $197,000 real market value of the subject property was so close to the $191,000 certified tax roll value that a change was not requested.

## II. ANALYSIS

The issue before this court is the subject property's real market value for the tax year 2010-11. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor,* TC–MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.,* 13 OTR 343, 345 (1995)). ORS

308.205(1) defines the "real market value" of both real and personal property as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller [in exchange for the property], each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[2] OAR 150-308.205-(A)(2)(a) sets out three "approaches" that Plaintiff "must" consider when determining the real market value of property: the sales comparison approach, cost approach, and income approach.[3] *See* ORS 308.205(2). Plaintiff did not use any of the three approaches. Defendant relied on the sales comparison approach.

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4-5 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV [Real Market Value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers.

---

[2] All references to Oregon Revised Statutes (ORS) are to the 2009 edition.

[3] All references to Oregon Administrative Rules (OAR) are to the 2010 edition.

Plaintiff offered his own testimony as an Oregon licensed real estate broker in support of his requested real market value. He did not submit an appraisal report. To rebut Defendant's comparable sales approach, Plaintiff testified that each of Defendant's comparable properties sold prior to the release of an inspection report. Plaintiff offered no evidence that the inspection report had a direct impact on the subject property's real market value as of the assessment. Plaintiff's assertion that the first unit sale in the development project after the forensic inspection sold for $120,000 is not evidence of the subject property's real market value as of the assessment date. Plaintiff did not testify or offer evidence that he made any adjustments to the sold unit's selling price for time, size, or other distinguishing differences. Unfortunately, Plaintiff's testimony alone cannot stand in the place of competent evidence, such as an appraisal report and other documents and expert testimony, to determine the subject property's real market value as of the assessment date.

Even though the burden has not shifted, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court[.]" ORS 305.412. Defendant's comparable sales approach supports the real market value on the tax roll.

III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff did not carry his burden of proof. The court accepts the Multnomah County Board of

/ / /

/ / /

/ / /

/ / /

/ / /

Property Tax Appeals' Order, dated March 10, 2011, sustaining the subject property's 2010-11

real market value determined by Defendant.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of March 2012.


_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

**This document was signed by Presiding Magistrate Jill A. Tanner on March 13, 2012.  The Court filed and entered this document on March 13, 2012.**